## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

March 3, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ANGELA A. BELCHER,**
**Claimant Below, Petitioner**

**vs.)    No. 16-0231** (BOR Appeal No. 2050829)
                    (Claim No. 2012002837)

**MYLAN PHARMACEUTICALS, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Angela A. Belcher, by her attorney Christopher J. Wallace, appeals the decision of the West Virginia Workers' Compensation Board of Review. Mylan Pharmaceuticals, Inc., by H. Dill Battle III, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated February 22, 2016, in which the Board affirmed the September 25, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's October 9, 2013, decision closing the claim for permanent partial disability and granting no additional permanent partial disability award. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Belcher was injured on July 21, 2011, when she slipped and caught herself with her arms. The claim was accepted for the compensable diagnoses of sprain of the right shoulder/ upper arm and sprain of the right wrist. Sushil Sethi, M.D., performed an independent medical evaluation on February 24, 2012. Dr. Sethi noted Ms. Belcher had been treated with cortisone injections and extensive physical therapy. He observed Ms. Belcher guarding herself with range of motion in spite of attending over 100 therapy sessions. Dr. Sethi found Ms. Belcher to be self-limiting in performing activities during the examination. He assessed 8% impairment based on the range of motion of the upper right extremity.

1

On March 22, 2012, the claims administrator awarded Ms. Belcher an 8% permanent partial disability award based on the report of Dr. Sethi. The claims administrator added reflex sympathetic dystrophy as a compensable condition on October 23, 2012. In November of 2012, Ms. Belcher was assessed regarding the need for a spinal cord stimulator and this surgery was later performed.

Dr. Sethi performed a second independent medical evaluation on August 9, 2013, for the compensable diagnoses of sprain of the right wrist, reflex sympathetic dystrophy of the right upper extremity, sprain of the right shoulder/ upper arm, and right mononeuritis. Dr. Sethi noted Ms. Belcher indicated that she felt good day to day with some general feeling of dysesthesia in the right arm. On examination, she had no decreased range of motion or neuromuscular deficit. Dr. Sethi found Ms. Belcher had no loss of motor strength and no loss of sensibility. In his opinion, the reflex sympathetic dystrophy had no effect on Ms. Belcher's activities of daily living, as the spinal cord stimulator had resolved any symptoms related to activities of daily living. Dr. Sethi assessed 9% upper extremity impairment for the right shoulder. He assessed 0% impairment for the right wrist sprain, reflex sympathetic dystrophy, and mononeuritis. The 9% upper extremity impairment was equivalent to 5% whole person impairment. Dr. Sethi noted Ms. Belcher had already been granted an 8% permanent partial disability award. Therefore, there was no increase in impairment based on his evaluation.

On October 6, 2013, Dr. Sethi prepared an addendum to his report stating that the spinal cord stimulator did not affect the impairment rating he assessed. The use of the spinal cord stimulator was considered in determining any residual effect on Ms. Belcher's activities of daily living. Dr. Sethi noted the purpose for using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) is to provide "an informed estimate of the degree to which the individuals capacity to carry out daily activities has been diminished". In his opinion, there was no additional impairment of Ms. Belcher's daily activities as a result of the implantation of the spinal cord stimulator. Based on Dr. Sethi's opinion, the claims administrator closed the claim for permanent partial disability and granted no additional permanent partial disability award on October 9, 2013.

Bruce Guberman, M.D., performed an independent medical evaluation on June 26, 2014. Ms. Belcher reported having constant pain throughout her entire right arm which was only partially improved with the spinal cord stimulator. She reported having difficulty with writing, using a computer, snowboarding, water skiing, snow skiing, driving, bathing, dressing herself, folding clothes, cooking and sleeping. Dr. Guberman's impression was chronic post-traumatic strain of the right shoulder, chronic post-traumatic strain of the right wrist, and complex regional pain syndrome of the right upper extremity. Dr. Guberman assessed 31% impairment for the right upper extremity based on range of motion abnormalities of the right thumb and right mid, ring, and little fingers. He assessed 85% impairment of the right upper extremity due to abnormal range of motion and sensory loss. He noted the 85% upper right extremity impairment equaled 51% whole person impairment. Dr. Guberman then assessed 2% whole person impairment for a skin disorder related to the spinal cord stimulator placement. Dr. Guberman assessed a total of 52% impairment of the whole person. In his opinion, 9% impairment for a prior right hand injury should be deducted leaving 42% impairment. He then deducted the 8% impairment that had

previously been awarded for the July 21, 2011, injury and determined Ms. Belcher had an additional 34% whole person impairment attributable to the injury.

Christopher Martin, M.D., performed an independent medical evaluation on September 15, 2014. He found no evidence of atrophy in the right upper extremity and both upper extremities were the same temperature to touch. Dr. Martin noted Ms. Belcher was hypersensitive to touch. Range of motion measurements in all joints of the right upper extremity were described by Ms. Belcher as painful. Dr. Martin requested autonomic studies be completed prior to issuing a final report. On April 8, 2015, Dr. Martin issued the final report, which included the results of the autonomic studies. Based on the autonomic studies, Dr. Martin opined that Ms. Belcher did not have reflex sympathetic dystrophy. He assessed 0% impairment. In his opinion, the impairment rating assessed by Dr. Guberman was excessive given Ms. Belcher's functional status.

Ms. Belcher asserted below that she is entitled to an additional permanent partial disability award based on the impairment assessed by Dr. Guberman. The Office of Judges did not agree. It affirmed the claims administrator's decision to deny an additional permanent partial disability award on September 25, 2015. The Office of Judges reviewed the medical reports of Dr. Sethi, Dr. Guberman, and Dr. Martin, as well as a significant number of medical records. The Office of Judges found Dr. Martin's report unreliable as he determined Ms. Belcher did not have reflex sympathetic dystrophy even though that was an accepted, compensable condition. The Office of Judges also found Dr. Guberman's report to be unreliable as he assessed the right upper extremity impairment to be almost as great as if Ms. Belcher's right upper extremity had been amputated. Additionally, Dr. Guberman's opinion was not commiserate with the entirety of the medical record regarding Ms. Belcher's use of and problems with her right upper extremity. The Office of Judges relied on Dr. Sethi's assessment of impairment. It found that he used the proper method of evaluation and that his assessment of impairment was the most credible based on the entirety of the record. The Board of Review affirmed the Office of Judges' Order in its February 22, 2016, decision.

We agree with the reasoning of the Office of Judges and the conclusions of the Board of Review. The opinion of Dr. Sethi is the most credible medical opinion regarding impairment. He evaluated Ms. Belcher before and after the implantation of the spinal cord stimulator. He explained the effect of the spinal cord stimulator on Ms. Belcher's activities of daily living. Based on Dr. Sethi's opinion, Ms. Belcher has not demonstrated an entitlement to additional permanent partial disability award due to the July 21, 2011, injury.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: March 3, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker